UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOYCELYN R CURLEY,<br><br>                      Plaintiff,<br><br>                vs.<br><br>NANCY A. BERRYHILL[1], Acting<br>Commissioner of the Social Security<br>Administration<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 1:16-cv-01773-SEB-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

      Joycelyn R. Curley ("Curley") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE AND REMAND** the decision of the Commissioner.

    **I.**    **Background**

      Curley filed an application for SSI on March 4, 2013, alleging an onset of disability date of January 16, 2013. [Dkt. 13-2 at 17.] Curley alleges disability due to a severe knee impairment, depression, and anxiety.[2] [Dkt. 13-2 at 21-22.] Curley's application was initially denied on May

---

[1] Nancy A. Berryhill is substituted in for Carolyn W. Colvin as the nominal defendant pursuant to Federal Rule of Civil Procedure 25(d).
[2] Curley and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 16 and Dkt. 17.] Because these facts involve Curley's confidential and otherwise sensitive medical

1

28, 2013, and denied again on August 27, 2013, upon reconsideration. [Dkt. 13-2 at 17.] Curley timely filed a written request for a hearing, which was held on July 15, 2014, before Administrative Law Judge David J. Begley. ("ALJ"). [*Id*.] The ALJ issued a decision on January 9, 2015, again denying Curley's applications for SSI. [Dkt. 13-2 at 14.] On May, 13, 2016, the Appeals Council denied Curley's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 13-2 at 1.] Curley timely filed her Complaint with this Court on July 1, 2016, which Complaint is now before the Court.

**II.    Legal Standard**

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

---

information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform her past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Curley has not engaged in substantial gainful activity since March 4, 2013, the application date. [Dkt. 13-2 at 19.] At step two, the ALJ determined that Curley "has the following severe impairments: degenerative joint disease of the left knee with ACL tear, obesity, depression, anxiety, and alcohol abuse." *Id.* However, at step three, the ALJ found that Curley does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 13-2 at 19.] In making this determination, the ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 12.04 (Depression), 12.06 (Anxiety Disorder), and 12.09 (Substance Addiction Disorder). *Id.*

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). He concluded that Plaintiff had the RFC to perform a range of light work except:

> Occasional pushing/pulling with the lower left extremity; prohibited from climbing ladders, ropes, and scaffolds and kneeling; occasional climbing of ramps and stairs, balancing, stooping, crouching, and crawling; work limited to simple, routine, and repetitive tasks; work involving only simple, work-related decisions and few, if any, workplace changes; and occasional interaction with co-workers, supervisors, and the general public.

In finding these limitations, the ALJ considered Curley's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 13-2 at 21.] The ALJ then acknowledged that the evidence presented could reasonably show that Curley suffers from the symptoms she alleges, but he found her statements "not entirely credible." [Dkt. 13-2 at 22.] At step four, the ALJ concluded the Plaintiff is unable to perform any past relevant work. [Dkt. 13-2 at 25.] The ALJ thus proceeded to step five, at which time he received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform unskilled light occupations such as a price marker, collator operator, and routing clerk.

4

Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 13-2 at 26.]

## IV. Discussion

Curley asserts the ALJ committed various errors that require remand. Specifically, Curley challenges the ALJ's RFC assessment and credibility determination. Curley further asserts the ALJ inadequately analyzed her impairments under Listing 1.02 and should have obtained a medical opinion as to equivalency to the listing.

### A. Residual Functional Capacity

Curley first argues that that the ALJ erred by failing to accommodate Curley's limitations in concentration, persistence, or pace in Curley's RFC or the hypothetical questions posed to the VE. As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *See*, *e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615 (7th Cir. 2010); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). This includes any deficiencies the claimant may have in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

In this case, the ALJ specifically found at *step three* that Curley has moderate difficulties with concentration, persistence, or pace, stating, "her impairments interfere with her ability to sustain focused attention and concentration and hinder her ability to complete tasks commonly found in work settings." [Dkt. 13-2 at 20.] Curley argues that the ALJ's failure to address these limitations explicitly in the RFC or hypothetical posed to the VE constitutes the same error as the ALJ in *O'Connor-Spinner*. This argument erroneously conflates the ALJ's step three determination with the ALJ's later RFC determination. At step three of the sequential evaluation process, the ALJ considered the "Paragraph B" criteria and found that Plaintiff had "moderate

5

difficulties" in concentration, persistence, or pace. The SSA, however, makes clear that such step three determinations are not RFC assessments:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96–8p. Based on this ruling, the fact that Plaintiff had "moderate difficulties" for the purposes of step three does not necessarily mean that Plaintiff also had moderate functional limitations that had to be included in the RFC. However, in order to construct the "logical bridge" from step three to the RFC determination, the ALJ should have explained *why* these difficulties were not reflected the RFC.

Each impairment contributes to the calculus, and it is only by taking all of a claimant's impairments, whether severe or not, into account that an ALJ can accurately evaluate a claimant's true RFC to work or to perform past work. This requirement ensures that all of the necessary factors are included in the equation. Consequently, the ALJ should refer to limitations on concentration, persistence, or pace in the hypothetical in order to "focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620–21. If the ALJ concluded that the limitations found at step three did not need to be reflected in the RFC, such conclusion should have been explained.

That did not happen here. The ALJ devised an RFC using precisely the language denounced by *O'Connor-Spinner* without explanation as to why the moderate difficulties from step three were abandoned. The ALJ's limitation to "simple, routine, and repetitive tasks" in the

6

RFC is insufficient to account for the moderate limitations in concentration, persistence or pace found by the ALJ. *See Spears v. Colvin*, 1:15-cv-01946-JMS-MPB, 2016 WL 5851592 (S.D. Ind. 2016). The additional language limiting Curley to "work involving only simple, work-related decisions and few, if any, work place changes" is too vague to offer any further direction for the VE.

The Commissioner attempts to side-step Curley's *O'Connor-Spinner* argument by asserting that the results of Curley's psychological consultative assessment were "essentially normal" and that she pointed to no evidence of mental impairments that exceeded those found by the ALJ. [Dkt. 17 at 11-12.] But this argument ignores the fact that the ALJ did, in fact, find Curley has moderate difficulties with concentration, persistence, or pace, and failed to address those difficulties in the RFC or the hypotheticals to the VE without explanation. The ALJ's blanket statement that Curley can perform "simple, routine, and repetitive tasks" does not ensure that the VE eliminated positions that would prove too difficult for someone whose mental impairments, as described by the ALJ, "interfere with her ability to sustain focused attention and concentration and hinder her ability to complete tasks". *See Yurt*, 758 F.3d at 859. Because the ALJ failed to build the logical bridge between his step three finding and the RFC, the Court must remand the ALJ's decision.

### B. Credibility Determination

Curley next challenges the ALJ's determination that Curley was not entirely credible. When assessing an ALJ's credibility evaluation, the Court does not undertake a *de novo* review of the evidence that was presented to the ALJ. Instead, the Court examines whether the ALJ's determination was reasoned and supported. It is only when the ALJ's determination lacks any explanation or support that the Court will declare it to be "patently wrong." *Elder v. Astrue*, 529

F.3d 408, 413–14 (7th Cir. 2008). The ALJ found that Curley was not credible because Curley has a poor work history with low earnings, provided inconsistent information about her alcohol and drug use, has recently looked for work, and her assertions concerning the severity of her symptoms are inconsistent with the objective medical evidence. [Dkt. 13-2 at 22-23.] The Court agrees with the Commissioner that the ALJ's finding was not patently wrong. On remand, however, when making the finding on Curley's credibility, the ALJ should be careful not to give unwarranted weight to any one factor.

The Court recognizes that, on remand and in future cases, the ALJ should consider Social Security Ruling 16-3p, 2016 WL 1020935, which effectively replaced Ruling 96-7p as of March 28, 2016. The Court cautions the ALJ to be cognizant of the changes that Ruling 16-3p made on the regulatory language about symptom evaluations, and how those changes may affect the ALJ's credibility determination on remand.

### C. Listing 1.02

Finally, Curley argues the ALJ failed to adequately explain why Curley's impairments do not meet Listing 1.02. Curley further asserts the ALJ should have obtained a medical opinion as to medical equivalency for that listing. An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment. SSR 96–6p. In some instances, this requires the ALJ to hear additional evidence from a medical examiner. *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (noting that the ALJ incorrectly made medical conclusions instead of consulting a medical examiner). However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone. *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009).

Here, the ALJ relied upon the Disability Determination Transmittal Form completed by the state agency physicians in this case. These forms constitute expert medical evidence that ALJ's may properly rely upon to find that a claimant does not meet or medically equal a listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Consequently, the Court does not find error with the ALJ's conclusion that Curley does not meet or equal Listing 1.02.

V.      **Conclusion**

The standard for review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but neither does it reweigh the evidence nor substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where, as here, the ALJ did not build a logical bridge between the evidence in the record and the ALJ's conclusion, the Court must remand. As the Court cannot find a complete logical bridge in the ALJ's five-step sequential analysis, the Court recommends that the Commissioner's decision be vacated and **REMANDED** for further proceedings.

**Notice Regarding Objections**

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577

F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Davis v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated: 12 MAY 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov